# CHARLESTON,

## DORR *v.* CAMDEN.

Submitted February 24, 1904—Decided March 8, 1904.

1. AGENCY—*Information Acquired During.*
    Neither agents or sub-agents nor attorneys nor assistants

thereto, can withhold from principal or client information acquired by them in the exercise of such agency or attorney-ship, and use the same to extort an increased compensation from such principal or client, or coerce such principal or client into a contract he would not enter into upon full information.   (p. 229).

2.  CONTINGENT FEE—*What Necessary to Sustain.*

To sustain a contingent fee it must be shown that no unfair advantage was taken of his client by the attorney, but that the same was entered into by the client after full knowledge of the facts and circumstances for legal services of skill, judgment and ability of a character to justify a con-tract for such contingent fee.   Ordinary services requiring no legal ability is not a sufficient consideration for such fee, wholly disproportionate thereto    (p. 231).

3.  CONTINGENT FEE—*Compensation for Services.*

When the services rendered are not of such character as to furnish consideration for a contract for a contingent fee, unfairly obtained from a client, the attorney may recover for the value of his actual services rendered his client upon pleadings and proofs justifying such recovery    (p. 232.)

4.  NEW TRIAL—*When Proper to Grant.*

When the court has improperly instructed the jury as to the law governing the facts as shown in evidence, a verdict in accordance with such instructions should, on motion of the prejudiced party, be promptly set aside, and a new trial granted.   (p. 234).

Error to Circuit Court, Wood County.

Action by C. P. Dorr against J. N. Camden.   Judgment for defendant.   Plaintiff brings error.

*Affirmed.*

VAN WINKLE & AMBLER, S. V. WOODS, W. E. HAYMOND, and JOHN F. HOLT, for plaintiff in error.

GEORGE E. PRICE, for defendant in error.

DENT, JUDGE:

C. P. Dorr, plaintiff, complains of the judgment of the cir-cuit court of Wood County bearing date on the 12th of January, 1903, in favor of Johnson N. Camden, defendant, setting aside the verdict of a jury in favor of the plaintiff for the sum of

$15,972.61 and granting the defendant a new trial. The gist of the action is stated in the declaration as follows, to-wit:

"And for this also, that heretofore, to-wit, on the——— day of——————, 1890, the said defendant claiming a right to certain lands, the legal title to which was in one William S. Dewing, which lands lie in the counties of Greenbrier, Nicholas and Webster, in the State of West Virginia, and lying within the boundaries of certain lands known as the Caperton lands, and the said plaintiff then and there, being an attorney at law duly licensed and practicing under the laws of West Virginia, having a knowledge of the facts and circumstances connected with the transactions as to said land, and the rights thereto, which were of value to said defendant, the said defendant then agreed with the plaintiff that he, the plaintiff, should furnish him the said information, and certain assistance in proceeding for the recovery of the said land, to-wit, should furnish the said defendant information of certain facts which were necessary in the preparation of the proper pleadings in such proceeding, and information as to obtaining the proof necessary in such proceeding, and that he, the said defendant, would pay the said plaintiff the sum of one dollar per acre for every acre that he, defendant, should recover of the said land, and he, the defendant, then and there faithfully promised the plaintiff to pay him the said sum of one dollar per acre for every acre so recovered, in consideration of the said assistance and information."

This undoubtedly shows a good cause of action free from maintenance or champerty. It is for compensation for services to be rendered, and for information to be given in support of, defendant's suit to be contingent upon and measured by the extent of defendant's final recovery, and if plaintiff had sustained it by proof limited to such allegations, his right of recovery would have been unquestionable. He was to have no share or portion in the thing to be recovered, but his compensation was to be in proportion to the extent thereof. And it must be viewed as alleging in effect a contract between an attorney and his client for a fee contingent in amount on the extent of the recovery. *Anderson* v. *Conaway,* 27 W. Va. 385.

This action is a sequence to the suit of *C. P. Dorr* v. *Dewing & Sons,* 36 W. Va. 466; *Dewing & Sons* v. *Hutton,* 40 W. Va.

578; *Hutton* v. *Dewing & Sons,* 12 W. Va. 691; *Dewing & Sons* v. *Hutton,* 48 W. Va. 576, and *Camden* v. *Dewing & Sons,* 47 *Id.* 310. The principal actors in all this comedy of errors, of which this seems to be the last scene or postlude, are A. H. Winchester, Elihu Hutton, Bernard J. Butcher and C. P. Dorr, plaintiff, acting as attorneys and agents for Dewing & Sons, and Johnson N. Camden, defendant. A. H. Winchester was the confidential and secret agent of Dewing & Sons, of Kalamazoo, Michigan, sent into the State of West Virginia to buy timber lands for his principals. When it came to purchasing what is known as the Gauley lands he took into partnership with him Elihu Hutton and Bernard L. Butcher. This partnership finding Mr. Camden, the defendant, engaged in taking options upon and acquiring lands in the Gauley region, where they designed to make their purchases, entered into a contract with the defendant, for the purpose of avoiding competition, and securing their lands at a very low rate, that if he would turn over to them his options and abandon the region to them that they would purchase for him certain large tracts of land containing 13,366 acres now involved in the suit, and lying within what is known as the "Caperton Survey," and charge him therefor only the actual price and expense of obtaining the same. Mr. Winchester employed the plaintiff as attorney and agent to assist in buying and securing the title to these lands, both for the partnership and for the defendant. He was fully aware that these lands were being purchased for the defendant. The defendant faithfully complied with his contract and the partnership by reason thereof, with the aid and assistance of their attorney, the plaintiff, were enabled to purchase in this Gauley region about fifty-five thousand acres of land, including defendant's at a little more than one dollar per acre. Excluding their purchases for defendant, they amounted to over forty thousand acres. After these purchases were completed, Butcher having withdrawn from the partnership, Dewing & Sons take the place of Winchester, pay the purchase money for these lands, and then buy out Hutton by agreeing to pay him the rate of fifty cents per acre. William S. Dewing acting in behalf of Dewing & Sons, agreed to take the place of Winchester and to carry out all agreements, contracts and understandings in good faith, of the former partnership. Having purchased Hutton's interest, Dew-

ing & Sor s insisted that all these lands should be conveyed to them and that they would hold the defendant's lands in trust for him, and to be conveyed to him on payment of the purchase money and expenses. The plaintiff not having been paid for his services in full by Winchester, sued Dewing & Sons for the balance due him and obtained a decree therefor amounting to $7,100.00, which decree was affirmed by this Court. The defendant, not having received his portion of the lands according to his contract, and having learned that the title thereto had been invested in Dewing & Sons, demanded the same from Dewing & Sons and they refusing to convey the same, was preparing to institute suit to enforce the contract between himself and Winchester, Hutton and Butcher, and of which they and Dewing & Sons, had received the full benefit, enabling them to make thousands of dollars that they might not otherwise have made.

The plaintiff, being employed by Winchester, Hutton and Butcher, to assist them as agent and attorney in carrying out their contract with and for the defendant, and having received a handsome compensation for his services in behalf of the defendant, approached the defendant in company with Mr. Hutton, and proposed to the defendant, to use his own language: "If you will give me two dollars an acre, I will see that you get the facts sufficient to recover this land," meaning the land that he had assisted Mr. Winchester, Mr. Hutton and Mr. Butcher, in acquiring for the defendant and for which service he had been paid by Dewing & Sons. According to the plaintiff's testimony, the defendant replied to this proposition: "Other people are interested with me and I would have to pay the purchase money, and I will give you one dollar an acre for all the land I will recover in a case of that kind." He says: "I will take it." Plaintiff then told Mr. Hutton in defendant's presence, that he would give him one-half the amount if he would aid him, to which Mr. Hutton assented. This is the contract on which this suit is brought. It is simply an agreement by an attorney to furnish the facts to secure a recovery, provided he receives compensation proportionate to such recovery. It is, in other words, a proposition by defendant's agent and attorney to furnish him information that this agent and attorney had acquired while acting as his agent in procuring these same lands for him, and for which he had received full compensation

but which had not vested according to contract, such information to be used in completing such contract, according to the true tenor and affect thereof.

This proposition is innocent enough in itself, but it has no consideration to support it. This information possessed by his agents and acquired by them in complying with this very contract, belonged to the defendant as a matter of law, and these agents had no right to charge him therefor, or make merchandise thereof at his expense. It may be said that the agency, especially that of Dorr, was at an end. Agency never ceases in so far as the knowledge and information acquired by the agent in carrying out the same, is concerned, until the contract which rendered the agency necessary is fully consummated, or the purpose which gave rise to the agency has been attained. While Dorr was not a party to the contract, nor obligated to see that it was fully carried out, yet having been employed by Winchester as attorney and agent, to aid in carrying it out, to the full extent and scope of his employment, he became as fully the defendant's agent as Winchester, Hutton and Dewing, and the information thus acquired by law belonged to his principal without money or reward other than he had already received, for his services rendered. As shown in the evidence, the only testimony that Dorr proposed to produce besides his own for which he had no right to charge, was that of Winchester, Hutton, and Butcher, defendant's agents to carry out this very contract, all of whom were under obligation, and had been fully compensated, to see that it was consummated. Therefore, neither the testimony of plaintiff nor of these other agents, furnish any consideration for plaintiff's alleged contract.

"*Assumpsit* will not lie to recover money promised for doing that which it was the parties' duty to do without reward; for it is extortion and illegal."

"So this action, being an equitable one, cannot be supported where the *assumpsit* arises from an unconscientious demand." 2 Tuck 134, 135. In obtaining these lands for the defendant, Dewing & Sons, Winchester, Hutton, Butcher and Dorr all acted as agents for the defendant and received compensation therefor, and now Dorr, one of these agents, demands a further compensation to furnish the necessary information growing out of the agency, to enable the principal to compel the other agents

to fulfill the contract under which they were all acting. This is an unconscientious demand unsustained by a good legal consideration. 6 Am. & En. En. Law (2 Ed.) 752. Not only is this true, but this alleged contract was obtained by open collusion between Dorr and Hutton, both of whom had been acting as agents for the defendant and under contract to secure these lands for him. By open collusion I mean they went together into the defendant's presence, and while the proposition was not made jointly to him, yet he was informed that Hutton was to participate in the additional compensation to the extent of one moiety thereof. Hutton had all the information the defendant needed and he was under legal obligation to furnish it to him and to see that he obtained the title to his lands from the parties whom Hutton had constituted trustee thereof for defendant's benefit, and if it took any additional compensation to obtain the lands, Hutton was in duty bound to pay it in order to carry out the contract in good faith.

All the knowledge of the agent belongs to the principal and he has no right to use it for his own benefit to extort money or other thing from his principal. I Perry on Trusts, sec. 206. This same rule applies to attorneys at law. In 1 Perry on Trusts sec. 202, it is said. "The client is so completely in the hands of the attorney in relation to the subject matter of litigation, that it would be almost impossible for him to enter into a free and fair contract in regard to it." "This disability of an attorney continues as long as the relation of attorney and client continues, and as much longer as the influence of the relation can be supposed to extend. If the relation has ceased but the influence of the relation continues to affect the minds of the parties, all contracts made under the influence will be avoided." Also in section 206, "Whatever an agent may be employed to do, he cannot use his position nor the knowledge obtained by his employment, to obtain a bargain from his principal." If he does, such bargain will be held invalid for undue influence. 27 Am. & En. En. Law, 477. In the present case, the plaintiff and Hutton having been agents to acquire these lands for the defendant and without giving him the information with regard to the lands he was entitled to have, through Dorr alone, advises the defendant they have the necessary information to acquire these lands for him which he had already fully compensated

them for acquiring if he would agree to pay Dorr one dollar per
acre for every acre recovered, to be divided between himself and
Hutton. By this proposition under the circumstances, defend-
ant was placed in a very unfair position. He knew his case de-
pended upon the evidence of these, his agents, together with his
other two agents, Butcher and Winchester, to some extent at
least unknown to the defendant. If he rejected their proposal
outright, they could give him much trouble and probably suc-
ceed if they made up their minds to do so, in depriving him of
his lands altogether. They seemingly already having broken
faith with him, he was placed in the quandary of accepting an
unjust contract or of running the risk of losing his lands, and
he might have been thereby driven to say such things as led
them to believe that he accepted their proposition, and which
as between strangers dealing at arm's length, would make a
valid contract.

Sub-agents and assistant attorneys are the agents and at-
torneys of the principal and client, it matters not by whom they
are employed, and are subject to all the obligations of agency
or attorneyship toward their principal or client, in so far as the
information acquired by them during the exercise of the agency,
is concerned. Neither agents nor attorneys can withhold infor-
mation acquired by virtue of and in the discharge of the duties
of such agency or attorneyship, and use it for the purpose of ex-
torting from principal or client, to whom such information
belongs as a matter of right and law, an increased compensation
for doing that, for which, they had already been fully compen-
sated.

It may be urged that there is included in the contract the
future service of Dorr as attorney, as Mr. Hutton says, in set-
ting up the proof and getting the same in shape so a recovery
might be had, which would furnish a sufficient consideration
to sustain the contract for a contingent fee. In the 5th Am. &
En. En. Law, (2d Ed.) 827, the principle of law governing
contingent fees, is given as follows: "It may be stated as a well
grounded rule, that a contract for a contingent fee must be made
in good faith, without suppression or reserve of fact or appre-
hended difficulties, or undue influence of any sort, or degree;
and the compensation bargained for must be absolutely just and

fair so that the transaction is characterized throughout by all good faith to the client."

Where an attorney suppresses the facts of the case, or uses any unfairness in securing a contract, of this character, it will be held invalid, and if he has rendered any serivce in carrying out such contract, he will be remitted to a recovery on a *quantum meruit*. *Chester County* v. *Barber,* 97 Pa. St. 455; *Stewart* v. *Houston & R. Co.,* 62 Tex. 248.

A contingent fee is only permitted to attorneys as reward for skill and diligence exercised in the prosecution of doubtful and litigated claims, and is not allowed for the rendition of mere minor services which any layman or inexperienced attorney might perform.

It is the skill, diligence, ability, experience, judicial knowledge and judgment of the attorney that is thereby rewarded, and the performance of duties that require no such qualities is wholly insufficient to sustain such fee, as the true measure of such services can be ascertained on a *quantum meruit*.

The evidence of this case clearly shows that the only duty the plaintiff was to perform was to furnish the evidence of himself, Winchester, Butcher, and Hutton, and the record and decision in the case of *Camden* v. *Dewing* shows the case wholly depended on the evidence of Winchester, Butcher and Hutton, all of whom were under obligation to the defendant as his fully compensated agents, to furnish him their evidence free of charge or compensation of any kind, whatsoever. It is therefore clear from the proofs that the plaintiff did nothing requiring skill, diligence, experience, ability, legal knowledge, or judgment, entitling him to a contingent fee for legal services and as before seen, the contract if entered into at all, was coerced from the defendant by the unfair advantage taken of him by his agents, withholding from him information that belonged to him.

This brings forward for consideration, the question as to whether the contract as alleged is supported by a preponderance of the evidence.

To constitute a contract there must be free, mutual assent. 7 Am. & En. En. Law, (2d Ed.), 110. As heretofore shown, defendant was placed in an unfair position by the proposers and was not dealing with them at arm's length. Even with this unfairness it is hard to say that he assented to the proposition

made by one of them. The beneficiaries, plaintiff and Hutton, say that he did. He denies and says he did not. but answered them diplomatically by referring them to his attorney, Mr. Mollohan, who had been engaged to manage the suit for him. The beneficiaries say that after he accepted, and while they were considering the matter, as to whether he should sign the writing prepared by the plaintiff, that Mr. Mollohan came in and the matter was referred to him, and he advised against signing any writing, for the reason that they would all have to be witnesses in the case, and it would be dangerous for them to have such contract brought out in evidence.

Mr. Mollohan is an attorney of skill and ability, of long experience and high standing in his profession. He testifies that when the plaintiff offered to show him the writing, he refused to have anything to do with it and advised the beneficiaries that such contract was not legal; and he then went and advised his client not to enter into or make any such contract. On such points, the beneficiaries on one side and the defendant and his attorney on the other, plainly contradict each other, while the facts and circumstances plainly preponderate in favor of the latter.

The plaintiff in his evidence in detailing his conversation with the defendant, starts out with the idea that the defendant knew nothing about the matter, while the fact is at least presumable that he had full information from his agents, Winchester, Butcher and Hutton, all about the matter, and if he did not Hutton was in position to furnish him, and was in duty bound to do so, such information at any time demanded. All he needed to sustain his case, was for Winchester, Butcher and Hutton to stand by him, and he had other lawyers to perform the heavy legal duties of his case. Hence, there was not the least necessity for him to enter into such contract unless it was to prevent his agents from becoming false to him. He was afraid of his agents and theerofre he had to treat them diplomatically. It is therefore very plain that both Mr. Mollohan and Mr. Camden, the defendant, testified fully to the truth of the transaction as they understood it, and the facts and circumstances bear them out. Nor can we say that the beneficiaries testified falsely though contradicted. They went to the defendant to secure a certain contract from him for the information they had acquired

about his business. He treated them diplomatically. From his diplomacy thew may have inferred assent to their proposition.

But such inference on the consideration proposed, will not justify or sustain a contract for a contingent fee, although it might sustain an action for services rendered by reason thereof upon a *quantum meruit.* It is therefore very plain that plaintiff is not entitled to recover on the special count under an express contract for a contingent fee, as set out in his declaration, and which he has endeavored to sustain in his evidence, but he may be entitled to recover under a general count for the value of the services actually rendered by him. Such invalid contract furnishes no criterion as to the amount that plaintiff will be entitled to recover if anything. 5. Am. & En. En. Law, (2d Ed.) 828.

From what has been said it is plain that the court instructed the jury under a mistaken view of the law, as applicable to the facts, and should have sustained the motion of the defendant to exclude the evidence, and direct a verdict for the defendant on the grounds that it did not sustain the special contract set out in the declaration, nor as set forth in the bill of particulars. The circuit court therefore committed no error in setting aside the verdict of the jury and in granting the defendant a new trial. As the plaintiff cannot recover on his alleged contract, for a contingent fee, this Court would probably be justified in entering a judgment for the defendant were it not that the plaintiff may be entitled to recover in this action on proper allegations and proofs, for the actual services rendered by him under his invalid contract, or attempt to make a contract, being the actual services rendered by him for the defendant, and of which the defendant enjoyed the benefit.

The judgment is therefore affirmed.

*Affirmed.*