BARBARA ONSTOTT *et al.* Appellants, *vs.* W. F. EDEL *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. DEEDS—*when a decree refusing to set aside deed will be upheld.* A decree refusing to set aside a deed for alleged incapacity of the grantor will be sustained, on appeal, where full value was paid for the land, and the evidence, though close, is sufficient to sustain the chancellor's finding that the attacks of paralysis which the grantor had suffered, though they affected his mind and body to some extent, did not so impair his mind that he was incapable of managing and disposing of his property.

2. ATTORNEYS AT LAW—*attorney should withdraw from case as soon as he decides to testify.* While it is entirely proper for an attorney to withdraw from a case just before he testifies as a witness if some unforeseen event occurs at the trial which renders his testimony necessary, yet if he knows from the beginning that his testimony may be needed he should determine at once whether he will act as a witness or as counsel, and if he decides to testify he should immediately withdraw from the case.

3. DOWER—*when purchaser cannot deny right of the grantor's widow to dower.* Where, by agreement, a purchaser takes a deed not signed by the grantor's wife, pays two-thirds of the purchase money to the grantor and deposits in a bank the remainder, which is to be paid to the grantor if the wife dies first or if he induces her to release her dower, but which, in case the wife survives and does not release dower, is to be paid to the purchaser, who shall then settle with the wife for her dower, the purchaser is estopped to claim that the wife is not entitled to dower because she elected to take under the grantor's will.

APPEAL from the Circuit Court of Perry county; the Hon. CHARLES T. MOORE, Judge, presiding.

On April 24, 1906, Barbara Onstott, Constance Onstott and Kyle Onstott, appellants, filed their bill (which was later amended) in the circuit court of Perry county against W. F. Edel, John Yehling and William A. Kimmel, appellees, to set aside a deed from Don Onstott to W. F. Edel and a deed from Edel to the other appellees for certain property located in the city of DuQuoin, Illinois, and for partition and the assignment of dower.

The bill, as amended, alleged that Don Onstott departed this life in Perry county, Illinois, on February 8, 1906, leaving him surviving, Barbara Onstott, his widow, and Constance Onstott and Kyle Onstott, his children and only heirs-at-law, and that at the time of his death he was seized in fee of lot 81 in the original plat of the city of DuQuoin; that during the year 1900 he was stricken with an attack of paralysis and ultimately died from the effects of said disease; that on or about February 25, 1904, the defendants, without the knowledge or consent of either of complainants, induced said Don Onstott, while he was utterly incapable of understanding or comprehending the business in which he was engaged, to execute a warranty deed conveying to W. F. Edel said lot for the nominal consideration of $1000, and that the defendants knew and had been informed before that time, by Barbara Onstott and others, of the mental and physical condition of said Don Onstott and knew that he was incapable of conveying his property; that on the following day said Edel conveyed the said lot by quit-claim deed to John Yehling and William A. Kimmel for the nominal consideration of $1000, and that on February 27, 1904, both of said deeds were recorded in the recorder's office of said Perry county; that since the death of said Don Onstott said Yehling and Kimmel have been in possession of said premises and have refused to recognize the rights and interests of complainants therein. The bill further alleged that the pretended purchase of said lot by Edel was only colorable and was made for said Yehling and Kimmel and that

the consideration paid was furnished by them; that there was actually paid to said Don Onstott the sum of $665 for said lot and that at the time of said conveyance it was worth the sum of $3000; alleged that said Barbara Onstott never joined in the said deed to Edel and that it never was presented to her for that purpose; that upon the death of said Don Onstott his said children became the owners in fee, as tenants in common, of said lot, subject to the dower interest of Barbara Onstott, his widow. The bill prayed for partition, assignment of dower and for the cancellation of the deed to Edel.

To the amended bill the defendants filed their joint and several answer, denying that Don Onstott was the owner of said lot 81 at the time of his death, and denying the allegations of the bill as to the mental capacity of the deceased at the time of the execution of the deed to W. F. Edel and as to their knowledge of his alleged mental incapacity at that time. The answer admits that the purchase by Edel was made for Yehling and Kimmel and that the consideration for the said purchase was furnished by them; avers that at the time of the delivery of said deed there was paid to the First National Bank of DuQuoin, at the direction of said Don Onstott, the sum of $666, part. of the purchase price of said lot, and that there was placed in said bank the further sum of $334, as provided by a written instrument executed by Onstott and Edel on the day of the execution of said deed, which is made part of the answer. The instrument, after reciting the conveyance of the lot to Edel, the payment of the sum of $666 to said Onstott, and that the deed conveying the lot was not signed by Barbara Onstott, the wife of Don Onstott, relinquishing her right of dower in said premises, provided that Edel should deposit in the First National Bank of DuQuoin a further sum of $334 as part consideration for said deed, to be paid to said Don Onstott in case he survived his said wife or in case he delivered to Edel a quit-claim deed from Barbara

Onstott releasing her dower interest therein, but to be paid to Edel, who should settle with the said Barbara Onstott for her dower interest in said premises, in case she survived her husband. Following the signatures of Onstott and Edel is an agreement signed by Yehling and Kimmel to pay Onstott interest at the rate of six percentum per annum on the sum so deposited until released under the provisions of the preceding contract, and which supplemental agreement defendants aver was written upon said instrument at the demand of said Onstott. The answer denies that said lot was worth the sum of $3000 at the time of the conveyance, and avers that it had been repeatedly offered for sale for a sum less than $1000; admits that Barbara Onstott did not join in said deed, and alleges that said Don Onstott informed defendants that he had tried to get his wife to sign the said deed with him; denies that Constance and Kyle Onstott have any interest in said premises because of the deed executed by their father, and denies that Barbara Onstott has any interest therein because of the operation of the will of said Don Onstott, which has been admitted to probate in said county and by which all of his property was bequeathed to his said wife; avers that she has accepted the terms of said will and thereby relinquished all right of dower in and to any premises which said Onstott might have conveyed, and did convey, during his lifetime and while he was her husband; avers that since the execution of said deed defendants have erected on said lot a valuable brick building at a cost of $1700, and that since its erection the said building has increased in value.

A replication was filed, and upon a hearing before the chancellor a decree was entered, finding, among other things, that Barbara Onstott did not join with her husband in said deed to Edel, and that she is entitled to dower in the said premises as the widow of said Don Onstott by reason of the said contract entered into by defendants, and that complainants have failed to establish, by a preponderance

of evidence, the allegations in their bill as to the mental incapacity of said Don Onstott at the time of the execution of said deed. It was ordered and decreed that the deed from Onstott to Edel and the deed from Edel and wife to Yehling and Kimmel be not canceled, and that Barbara Onstott recover her dower in said premises, exclusive of the improvements placed thereon by defendants.

On February 8, 1906, Don Onstott died at his home in the city of DuQuoin from the effects of paralysis, at the age of about sixty years. The first attack of the disease occurred some time during the year 1900, from which he shortly recovered in great measure. The disease was progressive in its nature, and on February 20, 1903, he suffered a second attack, which was much more serious than the first. The second attack of paralysis left him in a badly crippled condition. One arm was useless, the corner of his mouth drooped, and when attempting to walk one foot dragged on the ground. In trying to talk he sometimes mumbled and could not be understood. He remained in this condition until the third attack, which resulted in his death. During his lifetime Mr. Onstott was interested in various business enterprises in the city of DuQuoin and elsewhere, and it appears that prior to the appearance of the disease which resulted in his death he was a man of good business ability, kind and considerate to his family and very particular about his dress and personal appearance. Among other property owned by the deceased in the city of DuQuoin prior to the second attack of paralysis was the lot in controversy. For some time he had talked of selling this lot, and during the month of January or February, 1904, he requested his wife to join with him in a deed conveying the same, but this she refused to do and induced him to destroy the deed. A few days later, however, he went to the First National Bank in DuQuoin, where he signed the deed to Edel, which had already been prepared. At the same time $666 was deposited in the bank to his credit by the defendants and the contract

referred to in the answer was entered into at Onstott's suggestion.

On the hearing, sixteen witnesses who were intimately acquainted with the deceased and who had observed his physical and mental condition about the time the deed was executed, expressed their opinion that he was incapable of transacting ordinary business at that time. Thirteen witnesses who were of the opposite opinion testified for defendants. By the will of the deceased, which was offered in evidence by defendants, all his property is devised and bequeathed to Barbara Onstott.

It is contended by appellants that the decree entered by the court in reference to dower is erroneous, uncertain and incomplete, and that the finding of the decree as to the mental capacity of the deceased at the time of the execution of the deed is contrary to the manifest preponderance of the evidence. Appellees assign cross-errors challenging the decree in so far as it establishes the right of Barbara Onstott to dower.

F. M. YOUNGBLOOD, and W. W. BARR, for appellants.

W. A. SCHWARTZ, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The testimony offered on behalf of the appellants and that introduced by the appellees is in irreconcilable conflict. Don Onstott had three attacks of paralysis,—the first in January or February, 1900; the second in February, 1903, and the last, which caused his death, in the early part of 1906. The deed in question was made on February 24, 1904, and it is the theory of the appellants that ever after the second attack of paralysis he lacked mental capacity to sell and convey property. After February, 1903, however, he continued to direct his business affairs, being assisted and advised to some extent by his wife. She became involved in a lawsuit during that time, in reference to the construc-

tion of a dwelling house, and he managed the litigation and appeared and testified in court at some length. The property involved in this suit, prior to the time he sold it, was used by a tenant for an inclosure in which to keep live stock. It produced little or nothing in the way of rentals. Mr. Onstott regarded it as unproductive and had been trying for a considerable period to find a purchaser for it at the price at which it was sold to Edel, viz., $1000. After he had agreed to sell it to him at that price and a deed had been prepared his wife declined to join in the deed. Thereupon he entered into a contract in writing with Edel, the other appellees assenting, by which they took a deed for the property without the signature of the wife. Two-thirds of the purchase price was paid to him in cash and the remaining one-third was deposited in the First National Bank of Du-Quoin, to be held by that bank upon these conditions: If Onstott's wife died before he did then the money was to be paid to him, or if he should at any time procure from her a quit-claim deed to the owner of the premises, then the money was to be paid to him; if, however, she outlived her husband without having released her dower, then the money was to be paid to Edel, who was to "settle" with the wife with reference to her dower right in the premises. Don Onstott was to be paid interest at the rate of six per cent per annum on the money so deposited in the bank, so long as it was held there pursuant to the provisions of the contract.

The decree is supported by the testimony of a considerable number of the men with whom Onstott sustained the most intimate business relations during the later years of his life. That testimony indicates very strongly that while his physical strength was much less than normal after the second attack and while his mind was not as strong and vigorous after that attack as it had been prior to that time, he was nevertheless entirely sane and mentally capable of managing and disposing of his property. On the other hand, his family physician and others, greater in number

than those who spoke for appellees, testified that ever after the second attack of paralysis his mind was in a passive condition, in which he readily yielded to any suggestion or persuasion addressed to him; that he was at times slightly deranged, and was mentally incapable of selling and conveying property at all times after that attack.

Among those who testified on the part of appellees was an attorney at law who had been employed by them in this case but who does not appear for them in this court. He prepared the answers that were filed by appellees and acted for them until the time when the court entered upon the trial of the case. He took no part in the trial, and on the day before he testified he withdrew as solicitor for appellees. He testified that he withdrew as counsel because he learned that it would be necessary for him to testify, and that upon conference with his associate counsel the latter took the same view that he did in reference to the necessity of his becoming a witness, and that thereupon he advised his clients that he would not testify and act as counsel in the same case. It is earnestly insisted by appellants that this fact should be given great weight in determining whether or not the decree is against the manifest preponderance of the evidence in the case. Our views bearing upon the propriety of an attorney testifying in a case in which he is employed are stated at length in the case of *Wilkinson* v. *People,* 226 Ill. 135. The course pursued by the attorney in this case would not properly subject him to criticism had the apparent necessity for his going upon the witness stand resulted from some unforeseen event that occurred in the progress of the trial; but that was not so. It must have been at once apparent to him upon the examination of the bill herein that his testimony would be material. Immediately upon that fact becoming evident it was his duty to confer with his associate and his clients and then determine whether or not he would be a witness in the cause, and if he was to testify he should at that time have entirely sev-

ered his connection with the litigation. If the conclusion was that he should not testify, he and his clients should have abided by that decision, unless some emergency thereafter arose which was not anticipated at the time it was determined that he would not be a witness, making it important for the protection of his client's interest that he should testify. His withdrawal from the case was too long delayed. The chancellor, however, knew all the circumstances surrounding this witness, and should, and no doubt did, consider them in determining the weight to be given to his testimony.

Many persons testified as to the value of this property at the time the deed was made, and with one exception they united in saying that its fair cash value did not at that time exceed $1000. It is apparent, therefore, that the transaction does not, in itself, indicate any lack of mental capacity on the part of Don Onstott, and it is also apparent that he would have suffered no loss by reason thereof had his wife seen fit to release her dower in his lifetime or had he survived her.

Upon a careful review of all the testimony we are of the opinion that it cannot be said that the chancellor erred in his finding on the question of mental capacity.

Don Onstott died testate and made provision, by his will, for his wife. Appellees have assigned cross-errors, and insist that such provision bars the wife's right to dower in this property. The chancellor held,—as we think, correctly,—that Edel having agreed by his contract that the dower right of the widow, if not released by her, should (in case she survived her husband) be satisfied by him, appellees cannot now be heard to say that she has no dower in this property. Upon Onstott's death the one-third of the purchase money deposited in the bank at once became payable to Edel. If the dower right cannot be enforced, appellees have acquired the entire title for two-thirds of the amount they agreed to pay for it.

The decree correctly provided that Barbara Onstott should recover her dower in the premises exclusive of the improvements placed thereon by Yehling and Kimmel, but contained no provision to make effective that right. The case should be re-docketed in the circuit court and such further proceedings had as may be necessary to carry into effect the former decree of that court.

The decree of the circuit court will be affirmed. Each party will pay one-half the costs of this court.

*Decree affirmed.*