## ALEXANDER et al. v. WATSON et al.
### No. 4915.

Circuit Court of Appeals, Fourth Circuit.

May 29, 1942.

Arthur S. Dayton, of Charleston, W. Va., (William M. Robinson, of Pittsburgh, Pa., on the brief), for appellants.

Thomas B. Jackson, of Charleston, W. Va., and Thomas Watson, pro se, of Pittsburgh, Pa. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by the receivers of the Tower Hill Connellsville Coke Company of West Virginia from an order allowing attorneys' fees of $10,000 to Thomas Watson, an attorney, and D. G. Sisterson, an accountant, for services rendered in the trial in the United States District Court for the Western District of Pennsylvania of the case of Tower Hill Connellsville Coke Co. v. Heiner, Collector, 25 F.Supp. 505. The allowance is opposed by the receivers on the ground that the case was tried by other attorneys as counsel for the receivers, and that Watson and Sisterson participated in the trial in the role of witnesses only and rendered no services as attorneys for which they should be compensated.

The facts are that the suit in the Western District of Pennsylvania was instituted in behalf of the Tower Hill Connellsville Coke Company by Watson, who was one of the directors and the secretary of that company, as well as its attorney. The suit was for the recovery of an assessment of income tax for the year 1918, which was paid by Tower Hill on August 26, 1925. The ground of the suit was that the tax was barred by limitations when collected; and the defense asserted by the government was that the statute of limitations was not applicable because what was in effect a claim in abatement had been filed by taxpayer and because counsel for taxpayer by their statements and actions at the time had waived the statute and taxpayer was therefore precluded from relying upon it. The questions as to whether a claim in abatement had been filed by Watson and Sisterson and whether what they had done amounted to waiver were the only questions in the case; and both Watson and Sisterson testified with respect thereto when the case came on for trial.

The claim for refund, upon which the tax recovery suit was based, was filed by Watson in behalf of the taxpayer in 1929; and the suit for recovery was filed in 1930. Thereafter nothing further was done in the case until shortly before the trial, which occurred on January 3, 1938. In the meantime, receivers had been appointed for Tower Hill, and Watson and Sisterson had filed claim with the receivers for services rendered the company, including services rendered in this and other tax suits. In 1934 Watson withdrew as counsel in all the tax suits; and in 1937 there was a compromise settlement, approved by the court of the receivership, of the claim which he and Sisterson had filed on account of services rendered. It is admitted that the effect of this settlement was to bar both him and Sisterson from recovery on account of services rendered prior thereto.

Shortly before the case in the Western District of Pennsylvania was called for trial, Seifert, one of the attorneys for the receivers, asked Watson whether he would testify in the case and received a very unsatisfactory answer from Watson to the effect that he did not know whether he would testify or not. Nothing further occurred until December 31, 1937, when Seifert telephoned Watson that he wished his help in the case, that, if the case should be won, he would ask the court to allow a fee of $75,000 in addition to the fees to counsel for receivers which had already been agreed upon, and that, if the fee were allowed, Wat-

son and Sisterson might have 10 per cent thereof to be divided between them. At the time of this conversation, Seifert did not know of the compromise agreement under which the claim of Watson and Sisterson for past services in the case had been satisfied and released. Watson and Sisterson thereupon conferred with Seifert and Booth, another of the attorneys for the receivers, with respect to the trial of the case; and, when the case was called for trial, both took the stand and testified to the effect that no claim in abatement had been filed by them for the taxpayer and that nothing had been done upon which a defense of waiver or estoppel could be predicated which would prevent the bar of the statute of limitations applying to the taxes paid.

Neither Watson nor Sisterson took any part in the trial except to testify; and it is clear from the record that the conference prior to trial had relation to the substance of their testimony and how it was to be presented. The fact is that there was nothing else that they could have done. The questions involved were simple and the law with regard to them was clear. Counsel for the receivers had prepared the trial brief in the case and also a stipulation of facts, which, apart from the testimony of Watson and Sisterson, constituted all of the evidence offered by them in the case. It is shown that one change was made in the stipulation at the suggestion of Watson; but it is not shown what this change was and the reasonable inference is that it had relation to facts within his knowledge. Watson and Sisterson seem to think that they are entitled to an allowance because of services rendered in the case prior to the settlement of the account for services in 1937 and because of the value of their testimony in winning the case; but, as recovery for past services was precluded by the settlement, their claim resolves itself into one for services rendered in testifying, and we think that both Watson and Sisterson make this very clear in their testimony. Watson testified: "In the first place, the factor to which I attach the greatest importance is the beneficial results, and those beneficial results are these. In the Tower Hill litigation $250,000 has been realized by the attorneys here from assets which were given little or no value. I think it is a windfall. That resulted very largely from the services of Mr. Sisterson and me. *If Mr. Sisterson and I had not testified in the case there would have been no recovery of the*

$221,000 if we had not laid the ground for it by the work we did, the letters we wrote and the records we made and the claims for refund being filed timely and in proper form, and the suit brought in the District Court in proper time and form. If it had not been for those things there never have been any recovery. I am not attempting to say that I should be compensated for those services. I think they should be taken into consideration in arriving at any compensation to me for the later services because those were the tools with which we worked and the things resulted and the receivership capitalized on the work we did. Furthermore, the receivers had released me from all liability and I was under no obligation at all. *I could have let Mr. Seifert go on with his case. He could have subpoenaed me, but if I had not looked up my records I could have truthfully said 'It is so long ago my recollection is hazy.'* We did not do that. We left nothing undone; and I told him I thought some consideration should be given to the past work. I know that I signed a release without mental reservation. It was a joint common cause. Afterwards I was asked to waive my release and I assumed they would give consideration to what happened in the past." (Italics supplied.)

Again he said: "I want to say that Mr. Seifert and Mr. Booth handled the case perfectly. There was no criticism about the way they handled it. I will say for us also that if they had not had witnesses to prove the point in issue their efforts might have been futile; I do not know."

At another place he testified:

"Q. I understand the whole basis of your claim is, and the only basis, whatever happened between you and Mr. Seifert on December 31, 1937, is that correct? A. That spells the service we rendered, yes.

"Q. If Mr. Seifert had never had that conversation with you, you, admittedly, would have had no claim whatever? A. I would never have gone on the stand and you would never had had $221,000.

"Q. Your testimony was with respect to the one conversation in 1920? A. That clinched the whole thing.

"Q. And you discussed on that Sunday whether it would be necessary for you to go on the stand? A. We did.

"Q. Is it not a fact you only went on in rebuttal? A. That is right.

"Q. Is it not a fact that the prima facie case was made before you went on the

stand? A. Yes. We discussed that on Saturday and Sunday afternoon, as to the burden of proof, as to whether our prima facie case had been made. In as much as the other people brought in the new matter the burden was on them. We expected the Government would have some witnesses there, but they did not come. I went on the stand and clinched it. No other witness was there and we put it in and clinched it, which was most important."

The claim of Watson and Sisterson for services rendered was for the sum of $25,-000. Testifying with regard to the basis of this amount Sisterson said:

"Q. What items do you consider and what circumstances do you take into account and what factors are given weight by you in considering the amount of $25,000 as being fair and reasonable? A. Principally the results obtained which are, of course, the refund to the Tower Hill of $221,000. We also took into consideration that if the case had not been filed, that is the refund claimed, and the court case, had not been filed in time before the receivers took over there would not have been any case for refund. We also took into consideration that Mr. Watson and I were the only witnesses available to determine what the agreement was with the representatives of the Department in Washington. The Government in their affidavit of defense had stated that the letters and other documentary evidence did not contain all of the agreement and that, in fact, there was an oral agreement. Mr. Watson and I were the only ones available who could testify as to what that actual agreement was."

■ It is perfectly clear that Watson and Sisterson were not entitled to the allowance for their services in testifying as witnesses. They did not testify as experts, but as to facts within their personal knowledge. This knowledge they had acquired as agents and attorneys of the corporation in receivership; and upon the trial of an action to which that knowledge was pertinent, the receivers were entitled to have them testify as ordinary witnesses for no other compensation than the fees provided by law. Any agreement to pay them additional compensation for such testimony would have been void as lacking in consideration and also as contrary to public policy. Dorr v. Camden, 55 W.Va. 226, 46 S.E. 1014, 65 L.R.A. 348; Clifford v. Hughes, 139 App.Div. 730, 124 N.Y.S. 478; In re Ramschasel's Estate, 24 Pa.Super. 262; Dodge v. Stiles, 26 Conn. 463; Wright v. Somers, 125 Ill.App. 256; note 30 L.R.A., N.S., 278, 280. And, as the giving of such testimony could not furnish the basis for a valid contract between the parties for additional compensation, we think that it could not serve as ground for an allowance of such compensation by a court of equity.

■ The allowance by the court below was not made to compensate Watson and Sisterson for their testimony; and we do not understand counsel to contend that it can be so supported. Certainly an allowance could not be made them on the theory, intimated in the testimony of Watson quoted above, that in giving testimony they gave to their former client the benefit of information which they might otherwise have withheld; for the information belonged to the client and they had no right to withhold it. Dorr v. Camden, supra. And quite apart from this, the giving of testimony as to facts within one's knowledge is a matter of public duty, and one may not impose any condition upon the performance of that duty which the law does not authorize. Except in the case of expert witnesses, we know of no authority which would justify an allowance to witnesses in excess of ordinary witness fees, however valuable their testimony may have been to the parties calling them to testify.

■■ And we do not think that the allowance can be supported as an allowance of counsel fees. Prior services, which were undoubtedly of value, had already been fully compensated under the compromise agreement and could not furnish the basis of an allowance. For the trial of the case it was not their services as counsel but their testimony as witnesses that was needed. Able counsel had charge of the legal aspects of the case and had made all the preparation that was necessary. If Watson and Sisterson had been previously employed and had discovered that their testimony was required on the hearing of the case, it would have been their duty to withdraw from the professional employment. Callas v. Independent Taxi Owners' Ass'n, 62 App.D.C. 212, 66 F.2d 192, 194; Christensen v. United States, 7 Cir., 90 F.2d 152, 154; Inman v. Inman, 158 Va. 597, 164 S.E. 383, 387; Kaeser v. Bloomer, 85 Conn. 209, 82 A. 112, 49 L.R.A.,N.S., 422, 428 and note, Ann.Cas. 1913B, 710; Onstott v. Edel, 232 Ill. 201, 83 N.E. 806, 13 Ann.Cas. 28, and note;

State v. Woodside, 31 N.C. 496; McLaughlin v. Shields, 12 Pa. 283. A fortiori, they should not have accepted employment knowing that they would be called to testify and that their services as attorneys were being sought because their testimony as witnesses was the thing desired; for, as said by the Supreme Court of Wisconsin in Connolly v. Straw, 53 Wis. 645, 649, 11 N.W. 17, 19, "Of course, an attorney should not accept a retainer if he knows in advance that he will be a material witness for the party seeking to employ him."

The impropriety of counsel's testifying in a case in which he is employed, and his duty to withdraw from the employment if it becomes apparent that his testimony will be necessary, is thus forcibly stated in Jones on Evidence, 2d ed., vol. 5, sec. 2154, quoted with approval by the Circuit Court of Appeals of the Seventh Circuit in Christensen v. United States, supra [90 F.2d 154]:

"The practice of an attorney testifying on behalf of his client, is, however, universally frowned upon. Generally the question of whether or not he should take the stand as a witness on behalf of his client is one which an attorney should decide for himself in the light of his professional pride as an attorney and a sense of his true position and duty. He should remember the attitude of the courts on the subject, and unquestionably, if the nature of his testimony would be such as to bear upon a disputed question of fact material to the merits of the cause, should withdraw as attorney. The dual relation of attorney and witness in and for a cause on trial is not compatible with the conception of an attorney as an officer of the court and inclines to disrupt the normal balance of judicial machinery. It is tolerated at all only because occasionally proper in the interests of justice and because, rather than formulate a rule of absolute exclusion as has been done in some instances as to testimony by attorneys on disputed and material issues of fact, the great majority of the courts prefer to leave the question to the sound discretion of members of the bar with a threat of scathing reprimand in case of abuse. * * * Though occasionally necessary in the interests of justice, such occasions are rare, and even where the testimony of the attorney is seemingly indispensable the court should recommend counsel to withdraw from the cause.

" 'It is of doubtful professional propriety for an attorney to become a witness for his client *without first entirely withdrawing* from any further connection with the case, and an attorney occupying the attitude of both witness and attorney for his client subjects his testimony to criticism, if not suspicion, but, where the half of a valuable farm depends upon his evidence, he places himself in an unprofessional position, and must not be surprised if his evidence is impaired. While the profession is an honorable one, its members should not forget that even they may so act as to lose public confidence and general respect.' "

The Supreme Court of Illinois in Onstott v. Edel, supra [232 Ill. 201, 83 N.E. 809, 13 Ann.Cas. 28] expressed the duty of an attorney to withdraw from a case upon learning that his testimony would be required, in the following language: "The course pursued by the attorney in this case would not properly subject him to criticism had the apparent necessity for his going upon the witness stand resulted from some unforeseen event that occurred in the progress of the trial; but that was not so. It must have been at once apparent to him upon the examination of the bill herein that his testimony would be material. Immediately upon that fact becoming evident it was his duty to confer with his associate and his clients and then determine whether or not he would be a witness in the cause, and, if he was to testify, he should at that time have entirely severed his connection with the litigation."

No amount of sophistry can gloss over the impropriety of an attorney's accepting employment in a cause in which he knows in advance that he is to testify, and particularly is this true when he knows that his services as attorney are being sought so that he will be willing to testify. No attorney should be willing to place himself in such a position; and, when he has done so, he certainly should not expect the courts to approve his action by making him an allowance of attorney's fees.

The position of Sisterson has even less to commend it than that of Watson. He is not even an attorney at law to whom an allowance of attorney's fees could properly be made. He is an accountant; and there was certainly no need of an accountant in the trial of the issues involved in the Pennsylvania case. The record does not show that he rendered any service in connection with the case, after the compromise agreement, except to testify; and, as we have

seen, his giving of testimony could not serve as a basis for the allowance.

A supplemental brief, filed with the permission of the Court after the argument, calls attention to authorities of which French v. Hall, 119 U.S. 152, 7 S.Ct. 170, 30 L.Ed. 375, is typical, to the effect that a person is not rendered incompetent as a witness by reason of the fact that he is an attorney for one of the parties. That rule is well settled, but it does not touch the question here involved, which is whether a witness should accept employment as attorney in a cause in which he is to testify, or rather whether an allowance of attorney's fees should be made him by the court where he accepts employment under such circumstances and where the fact that he is to testify as a witness is the principal reason for his employment.

The supplemental brief calls attention also to the fact that, after the trial, Watson was consulted by counsel for the receivers as to the settlement that was agreed on and that he prepared affidavits and photostats showing that the assets of the Pennsylvania corporation, which had filed the suit against the government, had been transferred to the West Virginia corporation in receivership. These were services of minor character and Watson seems to have given them little weight in his testimony. The employment of Watson and Sisterson was not authorized by the court of the receivership, and there is no showing that the services rendered after the trial were necessary or could not have been rendered by the regular attorneys for the receivers, who have been fully compensated for these and all other services rendered by the allowance made them. Certainly, the property in receivership should not be saddled with allowances to attorneys for services rendered without authorization of court with respect to matters which could have been handled equally well by general counsel for the receivers and for which the latter have been compensated in the general allowance made them. And certainly, the court should not make an allowance to attorneys whose employment has not been authorized where it appears that the receivers were already adequately represented by counsel, that the appearance of these particular attorneys was sought in order that they might be willing to testify in the cause, and that the allowance to them as attorneys is sought to compensate them for their testimony as witnesses as well as for prior

services for which they have already been compensated.

For the reasons stated, the order appealed from will be reversed and the cause will be remanded with direction to dismiss the petition.

Reversed.